UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN VALDEZ,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>MICHAEL L. BENOV, WARDEN<br><br>　　　　Respondent. | Case No.: 1:11-cv-00883 JLT (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. 1)<br><br>ORDER DENYING AS MOOT MOTION FOR INJUNCTION<br><br>(Doc. 15) |

Petitioner Juan Valdez is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges the results of a prison disciplinary hearing at which he was found to have received money from another inmate without approval by prison officials. As a result of the disciplinary action, Petitioner was assessed 13 days lost credit and six months lost commissary privileges. For the reasons set forth below, the Petition for Writ of Habeas Corpus is **DENIED**.

I.   **Factual Background**

Petitioner is housed at Taft Correctional Institution, a government owned but privately-run prison contracted with the Bureau of Prisons. (Doc. 9 at 30) On May 5, 2010, prison officials completed an investigation in which they determined that Petitioner received money from another inmate, Johal, without receiving authorization from prison officials. (Doc. 9 at 11)

1

In the investigation, Johal admitted that on March 25, 2009, his wife placed the money into Petitioner's commissary account because Valdez assisted Johal with preparing his appeal. (Doc. 9 at 11) Petitioner admitted giving Johal his commissary "register" number. Id. Before the unit discipline committee ("UDC"), Petitioner admitted to providing Johal legal assistance but denied he had asked for payment and claimed Johal paid the amount without his consent. Id. The UDC referred the matter to a disciplinary hearing officer ("DHO") for hearing.[1] Id.

DHO J. Bernal, conducted the hearing on June 11, 2010. (Doc. 9 at 15)  More than a month before the hearing, Petitioner was given written notice of the charge. Id. at 11, 15. Petitioner waived his right to staff representation, did not request any witnesses be called and denied the charge. Id. at 15. At the hearing, Petitioner stated, "I never requested money from this inmate. In order to be guilty I needed to have requested he send me money. I admit giving Inmate Johal my registration number." Id. Petitioner also admitted receiving the money. Id. In addition to this testimony, the DHO received and considered the incident report and the account ledgers for Petitioner and Johal. Id. at 16.

At the conclusion of the hearing, the DHO found Petitioner had committed the offense. (Doc. 9 at 16)  The DHO based this conclusion on the evidence of the ledgers showing Petitioner received $250 from Johal and Petitioner's statements that he performed legal work for Johal and he gave Johal his registry account number. Id. Also, Johal admitted his wife placed $250 into Petitioner's account in exchange for Petitioner completing the legal work and the ledger information showed that Johal sent the money from his account to his wife for this purpose. Id.

Petitioner appealed this determination. (Doc. 9 at 19-20) In his appeal, he argued he was not given notice of the violation within 24 hours of the time the violation was discovered. Id. He claimed that the passage of more than a year since the time the money was deposited into his account until the disciplinary action was improper and required reversal of the disciplinary sanction. Id. Likewise, he argued that he did not receive a copy of the investigation report within 24 hours of the completion of

---

[1] The investigative report indicates that "Staff became aware of incident" on "Date: 5/5/10 Time: 0800 Hours." (Doc. 9 at 11)  Notably, on the "Incident Time Frame Documentation" form, completed by UDC Chairperson Barajas at the completion of the UDC committee meeting at 1:06 p.m. (Id. at 12, 13), it indicates that "Staff Became Aware On [sic] Inmates [sic] Involvement" on "03/25/09" at "1300" hours and that Petitioner was notified of the charges on "5/05/10" at "1101" hours. Id. at 13.

1  the investigation and that the investigating officer "manipulated the system" to make it look like the
2  report was timely provided. Id. Also, Petitioner argued that the disciplinary determination was not
3  supported because there was no evidence he requested the money be given to him. Id. Finally,
4  Plaintiff argued that the UDC committee members, Barajas and Duenas, were not certified to conduct
5  the UDC hearing. Id.

6  Petitioner's appeal was denied. (Doc. 9 at 22) The reviewer found that "ordinarily" copies of
7  investigative reports are provided within 24 hours of the discovered violation but when investigation is
8  required, the report is provided within 24 hours of its completion. Id. Given this, the reviewer found
9  the report was not provided late. Id. In addition, the reviewer determined that the UDC committee
10 members had been appropriately trained and, therefore, denied, Petitioner's claim in this regard. Id.
11 Finally, the reviewer described the evidence relied upon by the DHO and determined there was
12 sufficient support for the determination Petitioner accepted money from Johal without authorization by
13 prison staff Id.

14 Once again, Petitioner challenged the determination and submitted a Central Office
15 Administrative Remedy Appeal. (Doc. 9 at 24-25) Petitioner reiterated the arguments made earlier.
16 Id. First, Petitioner noted that the fact that the money was received into his account on March 25,
17 2009 at 1:00 p.m. had to be known by prison officials because it was received in the "Cash Cage."[2] Id.
18 at 24. Petitioner argued that the deposit was made openly without any attempt to disguise the deposit
19 as further evidence the prison officials were aware of it at the time the deposit was made. Id. Thus,
20 Petitioner challenged the failure to provide him notice of the charge for more than a year. Id. at 25.
21 Second, Petitioner argued there was not some evidence to support the determination of the DHO. Id.
22 Finally, again, Petitioner argued that UDC committee members Barajas and Duenas were not
23 authorized to participate in the UDC hearing. Id.

24 The appeal was denied. (Doc. 9 at 27) The reviewer determined that Plaintiff was provided
25 timely notice of the charge after the time the violation was discovered. Id. In doing so, the reviewer
26 determined the operative date was the day that the investigation was completed. Id. In addition, the

---

[2] Presumably, this is a "teller" booth of some sort where deposits can be made into inmates' commissary accounts.

reviewer found Petitioner received more than a month's notice of the disciplinary hearing held before the DHO. Id. The reviewer noted that the evidence relied upon by the DHO to conclude Petitioner had committed the offense was sufficient. Id. The reviewer did not address the claim that the UDC members were not certified to conduct the hearing but, instead, limited review to the disciplinary hearing and denied the appeal. Id.

## II. Jurisdiction

Habeas corpus relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution based upon the outcome of a prison disciplinary proceeding. If a constitutional violation has resulted in the loss of credits, it affects the duration of a sentence and may be remedied by way of a petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876–78 (9th Cir. 1990). Thus, this Court has subject matter jurisdiction. Moreover, at the time the petition was filed Petitioner was in custody at the Taft Correctional Institute, located in Taft, California, which is located within the jurisdiction of this Court. Therefore, this Court is the proper venue. See 28 U.S.C. § 2241(d).

## III. Standard of Review

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir.1996) (quoting Taylor v. Wallace, 931 F.2d 698, 700 (10th Cir.1991)). Though not afforded the full panoply of rights, due process requires the prisoner receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985); Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). Indeed, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Hill, 472 U.S. at 455 (citations omitted). The Constitution does not require that the evidence presented

preclude any conclusion other than that reached by the disciplinary board; rather, there need only be some evidence in order to ensure that there was some basis in fact for the decision. Id. at 457.

**III.   Analysis**

**A.   Petitioner's Due Process rights were not violated by failing to prosecute the matter more quickly**

In Wolff and again in Hill, the United States Supreme Court set forth the process due inmates who faced loss of credit for disciplinary violations. The process due are procedural protections "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S. 210, 228 (1990). One of these procedures guarantees the inmate advance written notice of the claimed violation.

Despite his general claim of a federal due process violation, Petitioner does not support any assertion he was denied any of the Wolff protections. Though he asserts he was "denied petitioner's right to be heard" (Doc. 1 at 12), Petitioner seems to base this claim on the fact the DHO did not give credence to Petitioner's argument and, instead, accepted the evidence gathered by other TCI employees. Id. Notably, had Petitioner felt the investigator's actions were flawed, it behooved him to request the investigator be present at the hearing for questioning; Petitioner did not do so. (Doc. 9 at 11)

Petitioner's biggest complaint stems from the alleged lack of compliance with the Code of Federal Regulations. Based thereon, Petitioner claims that the investigation had to have been conducted and completed and notice given to him within 24 hours of the deposit of the money into his account. He asserts that failing this, there is a violation of the CFR and a consequent violation of due process. The Court rejects this analysis.

First, despite that the deposit was made openly, there is no showing that the mere fact a deposit was made constitutes suspicious activity such that prison officials should have been alerted that Petitioner wrongfully received funds from another inmate. Indeed, it appears that anyone can make a deposit into an inmate's account assuming the depositor has the inmate's register number. Thus, alone, the fact a deposit is made does not demonstrate either a violation of the rule or notice to prison officials that the rule was violated.

Second, that the BOP endeavors to provide inmates with written notice of a disciplinary action within 24 hours of discovery of the violation according to 28 CFR 541.11 et seq., failure to do so does not demonstrate a failure of due process. To the contrary, all that is needed to satisfy due process is that Petitioner be given written notice 24 hours *before the disciplinary hearing* (Hill, 472 U.S. at 454; Wolff 418 U.S. at 563-67), which, of course, occurred here. (Doc. 9 1t 11, 15) Likewise, he must be given the opportunity to call witnesses and must be give a written decision setting forth the basis for the conclusion; both of which occurred here also. Id. at 15. Finally, the decision must be supported by some evidence which, as detailed below, also occurred.

Moreover, whether the UDC committee members were "certified" is of no moment. First, these committee members did not impose any discipline on Petitioner. Thus, even if there was constitutional import to the fact they were not certified—and there is not—reversing their determination, would not impact the discipline imposed. Second, for the reasons set forth above, Plaintiff was provided all of the process he was due by the Constitution; he was not constitutionally entitled to UDC members who had any particular certification or training. Instead, he was entitled only to an objective fact finder.[3] Finally, Petitioner provides no evidence that Barajas and Duenas were not certified and, to the contrary, the record demonstrates that Barajas and Duenas *were* properly trained as required by BOP regulations. (Doc. 9 at 22) Thus, the Court concludes Petitioner was provided all of the process due him.

**B.     The disciplinary determination was supported by some evidence**

As detailed above, at the hearing, Petitioner stated, "I never requested money from this inmate. In order to be guilty I needed to have requested he send me money. I admit giving Inmate Johal my registration number." Id. In addition, Petitioner admitted receiving the money (Id.) and admitted providing the legal assistance Johal needed. Id. at 11. Moreover, Johal admitted his wife placed $250 into Petitioner's account in exchange for Petitioner completing the legal work. Id. Finally, the ledgers for Petitioner and Jahal demonstrated that on March 25, 2009 a deposit of $250 was made into Petitioner's account and prior to this, a withdrawal of $250 was taken from Johal's account and sent to

---

[3] Though Petitioner take issue with the fact that the DHO was employed by the contractor, this fact alone does not demonstrate Petitioner was not afforded due process.

1  Johal's wife so she could complete the deposit into Petitioner's account. Id. at 16.

2  Petitioner makes much of the fact that he did not ask Johal to give him the money. However,
3  the evidence support a contrary determination in that Johal reported he paid the money to Petitioner to
4  compensate Petitioner for "preparing the appeal for him." (Doc. 9 at 11)  Coupled with the fact that
5  Petitioner gave Johal his register number there was sufficient evidence to determine that, indeed,
6  Petitioner *did* ask for and *expected* payment for his legal work.  Notably, in his traverse, Petitioner
7  characterizes this payment as a "gift" given for Petitioner preparing the appeal. (Doc. 12 at 5)
8  However, whether it is characterized as a gift or a payment does not impact the ultimate determination
9  that Petitioner *received* it without authorization.[4]

10  In considering the petition, the Court is not entitled to substitute its judgment for that of the
11  prison officials but, instead, merely to determine whether "some evidence" exists to support the
12  determination.  Hill, 472 U.S.at 455-56 ["Ascertaining whether this standard is satisfied does not
13  require examination of the entire record, independent assessment of the credibility of witnesses, or
14  weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record
15  that could support the conclusion reached by the disciplinary board.']  This Court is required to defer
16  to the prison officials who made the disciplinary decision because these proceedings "take place in a
17  highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence
18  that might be insufficient in less exigent circumstances." Id. at 456.  Thus, the Court is not entitled to
19  determine whether there are other factual scenarios which could show the prison officials acted
20  improperly when they issued the discipline.  Instead, the Court is required to determine whether is
21  some evidence in the record which supports the finding the prison officials made.  The Court
22  concludes there is. Because the Court finds the prison officials had "some basis in fact" (Hill at 456)
23  upon which the discipline decision was based, the outcome of disciplinary hearing must be upheld and
24  Petitioner is not entitled to habeas relief.

25  **C.   The DHO was authorized to act**

26  Petitioner argues that because the disciplinary hearing officer was not an employee of the BOP,

---

28  [4] Petitioner's apparent argument that the "gift" was authorized because it was presented to the cash cage is specious. (Doc. 12 at 4-5)

1  the disciplinary sanctions imposed are improper. Petitioner relies on United States v. Cardona, 266
2  F.Supp.2d 558, 559 (W.D.Tex.2003), for this proposition.  In Cardona, the court considered federal
3  criminal charges of possession of a prohibited object by an inmate in a federal prison and attempting
4  to provide it to a fellow inmate in violation of 18 U.S.C. § 1791(a)(1) and (2).  The inmate—who had
5  been placed in BOP custody—was housed in a privately-owned and privately-run facility that
6  contracted with the county to manage its local inmate population.  Id. In turn, the county sub-
7  contracted the excess bed-space to the BOP to house federal inmates.  Id.  Upon these facts, the court
8  determined the inmate alleged to have committed the crimes—though a federal prisoner—was not
9  held in a federal prison for many reasons  but, most importantly, that the Attorney General had no
10  "day-to-day management of the local institution or over the details of the custody and care of the
11  federal prisoners confined therein." Id.  The court concluded, "[W]hen the Attorney General is not
12  permitted to fulfill this role with respect to a penal facility, even when a contract for usage of that
13  facility exists, the facility cannot properly be categorized a 'Federal' prison." Id.   The court reasoned
14  that the mere presence of federal prisoners did not make the facility federal where control over the
15  daily operations and management of the institution and the custody and care of federal prisoners was
16  not in the Attorney General as set forth in 18 U.S.C. § 4001(b)(1). Petitioner similarly relies on United
17  States v. Rios–Flores, 318 F.Supp.2d 452 (W.D.Tex.2003), holding that the same institution was not a
18  federal prison within the scope of 18 U.S .C. § 1791(d)(4) for the same reasons as set forth in Cardona.
19
20        Indisputably, TCI is a private prison contracted with the BOP to house federal inmates.
21  However, the Court finds that disciplinary authority had been properly delegated to the DHO. First,
22  the pertinent statutory framework demonstrates the Attorney General has the ultimate authority over
23  federal penal institutions and federal inmates. For example, 18 U.S.C. § 4001(b)(2) provides that the
24  Attorney General "may establish and conduct industries, farms, and other activities and classify the
25  inmates; and provide for their proper government, discipline, treatment, care, rehabilitation, and
26  reformation." "[A]ll federal inmates" are placed under the control of the Bureau of Prisons which is
27  under the direction of the Attorney General.  18 U.S.C. § 4042(a)(1). In keeping with this authority,
28  the Attorney General appoints a director of the BOP and "may appoint such additional officers and

employees as he deems necessary." 18 USC § 4041.  In turn, the Attorney General though the BOP, is responsible for "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3).

Second, that the Attorney General is entitled to delegate his authority to the private corporation which operates TCI, is set forth in the contract entered into by the contractor and the BOP. (Doc. 9 at 29-72)  The contract provisions set forth "the contract performance requirements for the management and operation of the government owned-contractor-operated correctional institution in Taft, California." Id. at 30. Likewise, the contractor is required to "ensure the facility operates in a manner consistent with the mission of the Bureau of Prisons (BOP)." Id. at 31. The scope of the work requires the contractor to accept all federal inmates designated by the BOP to be housed at the facility and denies the contractor the right to refuse to accept any inmate designated for the Taft facility.  (Doc. 9 at 32, 50)

The contract reserves in the BOP the right to have staff on site to monitor contract performance. (Doc. 9 at 37.) Employment suitability is determined by using the BOP's guidelines and is subject to the approval of the BOP; authority to approve all contractor staff who work with inmates, to investigate alleged misconduct, and to withdraw final employment approval authority for any employee pursuant to specified standards, is retained by the BOP. Id. at 42-45, 48.  All employee credentials are required to be kept current and maintained for the duration of the person's contract performance. Id. at 45.

The agreement expressly provides for a contractor employee to be a DHO. The contract describes a DHO as a "government trained and certified contractor employee responsible for conducting disciplinary hearings." (Doc. 9 at 33.)  The contract requires the contractor "to comply with the policy and procedure for inmate discipline as contained in 28 CFR 541 and P.S. 5270." Id. Likewise, the DHO is to "be trained and certified by the BOP prior to issuance of the NTP." Id. at 62. In addition, the contract requires the government to "provide specialized training to assist the contractor in performing some specialized requirements," including 24-hour DHO training which is "mandatory as described in Section J of the contract." (Id. at 49.)  Clearly this occurred in that Respondent has submitted a certification from the United States Department of Justice, Federal Bureau

of Prisons, Management and Specialty Training Center, Aurora, Colorado for Jesse Bernal, Jr. dated May 22, 2008. (Doc. 9 at 74)

Thus, the facts of the case here are wildly different than in <u>Cardona</u> and <u>Rios–Flores</u>. TCI is federally owned and the Attorney General through the BOP, retains key elements of control over the employees and the daily operations of the institution.  Thus, the Court has no hesitation in concluding the authority to perform the duties of a DHO was properly delegated to contractor employee Bernal.

## ORDER

Based upon the foregoing, the Court **ORDERS**:

1. The petition from writ of habeas corpus (Doc. 1) is **DENIED**;
2. The motion for injunction (Doc. 15) is **DENIED as moot**.

IT IS SO ORDERED.

Dated:   **August 22, 2013**              /s/ Jennifer L. Thurston
                                          UNITED STATES MAGISTRATE JUDGE